THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEE OTIS GRIFFIN *et al.*, Defendants-Appellants.

Fifth District   No. 81—430

Opinion filed May 14, 1984.

KARNS, J., concurring in part and dissenting in part.

David C. Hoffman, of Ripplinger, Dixon & Hoffman, of Belleville, for appellant Lee Otis Griffin.

Randy E. Blue and David M. Raymond, both of State Appellate Defender's Office, of Mt. Vernon, for appellant Jimmy Lee Smith.

John Baricevic, State's Attorney, of Belleville (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Com-

mission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of St. Clair County, defendants were convicted of three counts of murder and one count of armed violence. Defendant Griffin was sentenced to three concurrent terms of 40 years for the murder convictions, and one concurrent term of 30 years for the armed violence conviction. Defendant Smith received three concurrent life sentences, and one concurrent 60-year sentence. A partial summary of the testimony presented at trial follows.

Charles Kellick testified that on February 5, 1981, he went with his friend, Charles Sims, to an apartment inhabited by Ronald Walker and Christi Smith. Velma Robinson accompanied Kellick and Sims, but remained in Kellick's truck and did not enter the apartment building. Upon entering the unlocked apartment and proceeding to the bathroom, Kellick and Sims encountered Christi Smith in the company of defendant Griffin. Ms. Smith was crying. As Charles Sims stepped into the bathroom, defendant Griffin shot him. Kellick turned and observed two other men. He ran to the front door of the apartment, and was shot in the back of the head. Defendant Smith then approached Kellick and shot him in the face. Feigning death until his assailants departed, Kellick hid himself under a stairway until police arrived. Kellick testified that he had observed defendant Griffin on two prior occasions. The first occasion was when Kellick patronized a furniture store owned by Griffin. The second occasion was when Kellick and Sims had given Christi Smith a ride to an apartment where Griffin and defendant Smith were present. This was apparently the only time Kellick had observed defendant Smith (known to Kellick by the nickname "Rush City Jimmy") prior to the shooting.

Velma Robinson testified that she met Kellick and Sims at approximately 5 p.m. on the day in question. Following a discussion, she accompanied Kellick and Sims to the apartment building. Immediately after Kellick and Sims entered the building, she observed two other men (one of which she identified as defendant Griffin) exit a parked car and enter the same building. Within seconds, she heard a shot. The two men emerged from the building and drove away. Several minutes later, she observed Ronald Walker enter the building. After Walker's arrival, the same two men she had observed previously reentered the building. Upon hearing a shot, she drove away to find a policeman.

Lionel Settles, an East St. Louis police officer, testified that he

was working as a security guard at the National Food Store on the evening of February 5, 1981. A person subsequently identified as Ronald Walker ran into the store, bleeding profusely from bullet wounds. Settles testified as follows concerning Walker's subsequent statements:

"I had a conversation as I was saying with the subject as to what had happened. And when he said he walked into his apartment and saw the two people on the floor, one of which was his girl friend, they were—he just mentioned they, were standing inside of the door, and told him to come inside. And as he made a couple of steps forward, he was shot.

Q. Did he tell you who shot him?

A. Yes, he did.

Q. What did he say?

[DEFENSE COUNSEL]: Continuing objection.

THE COURT: Note the same objection. Same ruling.

A. He said a subject by the name of Lee had shot him.

Q. Did he say anything more to identify Lee?

A. Yes, he said the subject named Lee that owns a used furniture store in the outer State Street area.

Q. Did you ask him who had shot his girl friend?

A. Yes, I did. His reply was a subject only known to him as Rush City Jimmy."

Darrell Rice, an Illinois State trooper, testified that he was off duty on the evening in question, and purchasing groceries at the National Food Store. At approximately 6:30 p.m., Trooper Rice was engaged in informal conversation with Officer Settles. At that time, Ronald Walker entered the store. Trooper Rice's account of Walker's statements concerning his assailant was as follows:

"Q. Did anyone ask who shot him?

A. Yes, we asked him who shot him, and he stated that a fellow by the name of Lee, his friend shot him, Lee's friend shot him, and he also stated that a fellow they called Rush City Jimmy shot his girl friend at that house."

David Winchester, associate manager of the National Food Store, testified that he was present in the store at approximately 6:30 p.m. on the same evening, and that he also witnessed Ronald Walker's statements. According to Mr. Winchester, Ronald Walker had been talking to Officer Settles and Trooper Rice "[p]ossibly 30 seconds" before Mr. Winchester arrived. A portion of Mr. Winchester's testimony follows:

"Q. *** What remarks do you remember?

A. Okay. He[1] said they were talking about a furniture store, a guy that ran a furniture store, and that they put a gun on his face, and told him to come on inside, and at the time I thought maybe he was in a stick-up or something at a furniture store. But then they asked him where the apartment was, and he said [sic] 11th Street address. *** I remember he said there was three more dead in the apartment, and he said my girl friend is dead. He said they killed my girl friend.

Q. Did he say who had shot him?

A. I didn't hear that, no.

Q. Did he say who had shot his girl friend?

A. He said Rush City Jimmy had shot his girl friend."

All three witnesses to Ronald Walker's statements testified that Walker requested hospitalization and indicated a belief of impending death.

The key defense witness was Priscilla Smith, who testified that in the late afternoon of February 5, 1981, she was present at Robert Easton's tavern in East St. Louis. Between 4:30 and 5 that afternoon, she observed both defendants playing cards. Sometime after 6 p.m., defendant Griffin approached her and borrowed $5. At some point between 6:30 and 7 p.m. (i.e., "something to 7"), Ms. Smith noted that defendants had left the tavern.

Defendant Griffin testified on his own behalf. He stated that he and defendant Smith arrived at Easton's tavern shortly before 5 p.m., and left at approximately five minutes before 7 p.m.

One of several allegations of error raised by defendant Griffin, and the only allegation raised by defendant Smith, is that the court erred in admitting certain photographs of the victims which, it is argued, were introduced for the purpose of inflaming the jury and prejudicing it against defendants. The black and white photographs depict the bodies of Charles Sims, Christi Smith, and Ronald Walker as they appeared in the morgue. While the bodies are unclothed, only the victims' heads and chests, wherein the bullet wounds were sustained, are visible. One of the pictures of Christi Smith displays a considerable quantity of dried blood on her face.

■ The decision as to whether a photograph of a deceased person should be admitted into evidence normally rests within the discretion of the trial court. (*People v. Lefler* (1967), 38 Ill. 2d 216, 221, 230 N.E.2d 827.) Where such photographs are relevant to establish any

---

[1]In the context of Mr. Winchester's testimony, it is unclear whether the pronoun here refers to Officer Settles, Trooper Rice, or Ronald Walker.

fact in issue, they are admissible, even though the photographs may be of a gruesome nature. (*People v. West* (1977), 54 Ill. App. 3d 903, 909, 370 N.E.2d 265.) A defendant may not avoid the introduction of photographic evidence by offering to stipulate to the facts for which the evidence is offered as proof. (*People v. Speck* (1968), 41 Ill. 2d 177, 201, 242 N.E.2d 208.) Moreover, photographs bearing on the cause of death of an alleged murder victim do not become unnecessarily cumulative because there is oral testimony bearing on the same issues. (*People v. Henenberg* (1973), 55 Ill. 2d 5, 14, 302 N.E.2d 27.) The photographs of Sims, Smith, and Walker tended to establish the identity of the victims and the fact and cause of death. The instant case is distinguishable from *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827, cited by defendants. In *Lefler*, it was held that autopsic color photographs of incisions in the chest cavity and skull of a baby allegedly murdered by her father were improperly admitted, since the actual body of the deceased child bore little superficial evidence of injury and the gruesome nature of the pictures was caused almost entirely by the autopsy procedures. Detective Evan Kyle, who took the photographs of the victims in the instant case, testified that the photographs, apart from the removal of clothing from the bodies, accurately portrayed the decedents as they appeared at the scene of the crime.

The remaining allegations of error are raised by defendant Griffin. Griffin first contends that the trial court erred in denying his motion for a severance, thus subjecting him to undue prejudice in view of defendant Smith's criminal record, and preventing his attorney, who also served as counsel for Smith, from pursuing the defensive theory most advantageous to Griffin.

The general rule governing severance is that persons jointly indicted should be jointly tried. (*People v. Brown* (1975), 27 Ill. App. 3d 569, 575, 327 N.E.2d 51.) In determining whether a severance should be granted, the primary consideration is whether the defenses are of such an antagonistic nature that a severance is imperative to insure a fair trial. (*People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356.) The defenses of Smith and Griffin were in no manner inconsistent. Indeed, both defendants utilized the same alibi defense. Defendant Griffin's specific allegation that a joint trial with joint counsel precluded his attorney from utilizing the most favorable defense is properly channeled into an allegation of ineffective assistance of counsel, which we address below. The fact that an accused's codefendant has a criminal record does not in itself operate as a ground for separate trials, since any prejudice which is feared may be prevented by a proper instruction. (*People v. Canaday* (1971), 49 Ill. 2d

416, 425, 275 N.E.2d 356.) In any event, we view the issue as moot, since defendant Smith's criminal record was never introduced into evidence at trial.

■■ Defendant Griffin next contends that the trial court denied effective cross-examination of Charles Kellick by preventing defendant from questioning Kellick about a pending criminal charge. On direct examination, Kellick testified that he had spent three years in prison for burglary, and four years and three months in prison for escape from the St. Clair County jail. Defense counsel began his cross-examination of Kellick as follows:

"Q. Mr. Kellick, you are at the present time indicted here in St. Clair County, are you not?

A. Yes, I am.

Q. And your case is pending here in St. Clair County?

A. Yes.

Q. When were you indicted here in St. Clair County?

A. In October.

Q. In October of 1980?

A. Yes sir.

Q. And your case is still pending at the present time?

A. Yes sir, it is.

Q. Is that right?

A. Yes sir, it is.

Q. I guess it is scheduled for disposition after this is over with, isn't it?

A. I guess it is, I don't know.

Q. All right. You have had negotiations with the disposition and settlement of your case [*sic*] after this case is over, haven't you?

A. No, I haven't talked with my lawyer. My lawyer is Mr. Robert Rice. I haven't talked to him about it at any time."

Defense counsel proceeded to supply Kellick with a document Kellick identified as a "[f]ederal rap sheet." Counsel then questioned Kellick concerning a charge of possession of a controlled substance. Kellick explained the charges were dropped when analysis revealed that the allegedly controlled substance was only caffeine. Following this questioning, the State raised the following objection:

"MR. HAMILTON: We have let this go, we have given considerable leeway, because of what we brought on [*sic*] on direct examination about Mr. Kellick's background, but [defense counsel] knows full well he can't interrogate about anything except convictions."

Defendant argues that the trial court, in sustaining this objection, committed reversible error, notwithstanding the fact that defense counsel proceeded to question Kellick concerning two additional past charges. The case of *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708, cited by defendant, held that it was error to restrict defense counsel's attempt to impeach a State's witness by establishing, as a possible motive to testify falsely, that criminal charges against the witness were dismissed in exchange for the witness' testimony. Establishing a similar motive on the part of Kellick would appear to have been the objective of defense counsel in the instant case. Accordingly, defense counsel was permitted to question Kellick about the pending charge in St. Clair County, inquiring specifically about "negotiations *** and settlement." The trial court did not err in sustaining the State's objection to questions about past charges listed on Kellick's "rap sheet," since it was not apparent how these charges would have provided Kellick with a motive to testify falsely. Absent a demonstration of bias, interest or motive to offer false testimony, a witness' character cannot be impeached by evidence of prior arrests. *People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498.

■ Defendant Griffin also argues that the trial court erroneously allowed hearsay testimony regarding the statements made by Ronald Walker as he lay injured in the supermarket. The trial court admitted the testimony on the ground that Walker's statements constituted a dying declaration. Among the conditions necessary to the admissibility of a statement as a dying declaration are (1) the declarant's consciousness of impending death and (2) an intelligible communication of the utterance or declaration. (*People v. Scott* (1972), 52 Ill. 2d 432, 438, 288 N.E.2d 478.) Defendant argues that neither of these conditions was met.

Walker's consciousness of impending death was established by the testimony of all three witnesses to the declaration. Each testified that Walker stated that he was going to die. Defendant points to the fact that Walker repeatedly requested an ambulance as evidence that Walker did not have the requisite conviction of impending death. The fact that a declarant requests hospitalization, however, is not sufficient to render a statement ineffective as a dying declaration where the totality of the circumstances surrounding the statement indicate a belief of imminent death. *E.g., People v. Davis* (1981), 93 Ill. App. 3d 217, 232, 416 N.E.2d 1197.

Walker's declaration was also of such a character as to meet the requisite standard of intelligibility. "Any adequate method of communication, whether by word or by *signs* or *otherwise,* will suffice, pro-

vided the indication is positive and definite, and seems to proceed from an intelligence of its meaning ***." (5 Wigmore on Evidence sec. 1445 (3d ed. 1940), cited by *People v. Scott* (1972), 52 Ill. 2d 432, 438, 288 N.E.2d 478.) The instant case is distinguishable from *Scott*, where a decedent's declaration was held unintelligible because a witness, admitting that he did not clearly understand any portion of the statement, nevertheless "interpreted" the decedent's "mumblings" to mean "brother-in-law." Walker's precise expression regarding defendant Griffin's involvement in the crime was reported differently by the three witnesses. Nevertheless, there is no question regarding the clarity or sufficiency of Walker's articulated utterances. The fact that each of the witnesses to the declaration offered a slightly different version of what Walker said properly affects the weight, and not the admissibility, of Walker's statement.

■ Defendant Griffin's final argument is that he was denied effective assistance of counsel. Griffin contends that trial counsel's position as attorney for both defendants precluded counsel from pursuing the theory most advantageous to Griffin. Defendant Griffin cites statements made by police sergeant L.C. Moore before the grand jury, to the effect that Griffin told Moore that it wasn't his (Griffin's) idea to kill anyone. Defendant proceeds to argue that trial counsel should have pursued the defense that Griffin had been a nonparticipating bystander while the killings took place. Defendant Griffin also notes that only one of the witnesses to Walker's dying declaration identified Griffin by name, while all three identified Smith. In representing both defendants, it is argued, trial counsel was not free to exploit this fact in Griffin's favor.

In criminal cases where codefendants are jointly represented by one attorney, a defendant must demonstrate " 'an actual conflict of interest manifested at trial' " in order to claim a denial of effective assistance of counsel. (*People v. Washington* (1984), 101 Ill. 2d 104, 112, quoting *People v. Nelson* (1980), 82 Ill. 2d 67, 411 N.E. 261.) As we have noted above, the instant case did not present a situation where antagonistic or inconsistent defenses were presented at trial, since both defendants relied upon a single alibi defense. Defendant Griffin argues, in effect, that his attorney was incompetent by his failure to abandon the alibi defense and, keyed by Sergeant Moore's hearsay testimony before the grand jury, portray defendant Griffin as a "nonparticipating bystander" to the killings. We find this proposed alternative defense too speculative to constitute the actual conflict required by *Washington* and *Nelson*. Given the eyewitness testimony of Charles Kellick and the statutory imposition of accountability (Ill. Rev. Stat.

1981, ch. 38, par. 5—2(c)), it is apparent neither that such a defense would have been effective nor readily established. Furthermore, there is nothing in the record to indicate that defendant Griffin presented his attorney with any facts other than those supportive of the alibi defense. In the absence of contrary evidence, it must be presumed that the defense pursued by counsel was the defense effectively presented to counsel by defendant, particularly when the defense is supported by defendant's own testimony at trial. The failure of counsel to adopt a defense inconsistent with his client's testimony cannot reasonably be characterized as incompetence.

■■ Defendant Griffin alleges that his attorney failed in other respects to provide effective assistance, notably in not objecting to 23 separate instances of "rambling statements of hearsay connected with police procedure." To the extent that defense counsel's failure to object to these and other noted statements of State's witnesses and State's counsel actually may have involved error or poor tactical judgment, the resulting prejudice to defendant was not of a magnitude sufficient to support the allegation of ineffective assistance. Our examination of the record directs us to the same conclusion regarding the additional alleged errors. The competency of an attorney is determined from the totality of his conduct at trial. (*People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677.) Mistakes in strategy will not in themselves render a defendant's representation incompetent. (*People v. Robinson* (1979), 70 Ill. App. 3d 24, 27, 387 N.E.2d 1114.) Representation by counsel, whether court-appointed or privately retained, is constitutionally deficient if counsel's alleged inadequacy produced substantial prejudice to the defendant, without which the result would probably have been different. (*People v. Royse* (1983), 99 Ill. 2d 163, 168.) The record in the instant case does not indicate such prejudice.

For the reasons stated above, the judgments of the circuit court of St. Clair County are affirmed.

Affirmed.

WELCH, P.J., concurs.

JUSTICE KARNS, concurring in part and dissenting in part:

I concur in the opinion of the court affirming the judgment of conviction of Jimmy Lee Smith; however, I dissent in the affirmance of the judgment of conviction of Lee Otis Griffin for the reasons stated in my opinion in *People v. Griffin* (1984), 124 Ill. App. 3d 169.