Lee Otis GRIFFIN, Petitioner–Appellant,

v.

Althea CAMP, Warden, Graham Correctional Center, Respondent–Appellee.

No. 93–3798.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1994.

Decided Nov. 14, 1994.

Arden J. Lang and Charles M. Schiedel (argued), Office of State Appellate Defender, Fourth Judicial Dist., Springfield, IL, for petitioner-appellant.

Karen Alice Kloppe, Office of Atty. Gen., Criminal Appeals Div., Springfield, IL (argued), for respondent-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and GRANT, District Judge.*

FLAUM, Circuit Judge.

In 1981, a jury in the circuit court of St. Clair County, Illinois convicted the petitioner, Lee Otis Griffin ("Griffin") of three counts of murder and one count of armed violence. He was sentenced to three concurrent terms of 40 years for the murder convictions and one concurrent term of 30 years for the armed violence conviction. After unsuccessfully appealing his conviction in the Illinois courts, Griffin filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied Griffin's petition. On appeal, Griffin contends that he was denied effective assistance of counsel arising from joint representation of him and his co-defendant at the trial. Because of inconsistencies between the district court's fact finding and the record, we remand to the district court for reexamination of the record regarding factual findings relevant to the ineffective assistance of counsel claims.

### I.

This case has been in front of both Illinois state and federal courts for thirteen years. Detailed descriptions of the facts have been set out in the opinions of the direct appeal of Griffin's convictions, 124 Ill.App.3d 119, 79 Ill.Dec. 501, 503–07, 463 N.E.2d 1055, 1057–62 (5th Dist.1984), his collateral state attack of his convictions, 124 Ill.App.3d 169, 79 Ill. Dec. 509, 510–15, 463 N.E.2d 1063, 1064–69 (5th Dist.1984), and the Illinois Supreme Court's review of his convictions, 109 Ill.2d 293, 93 Ill.Dec. 774, 774–777, 487 N.E.2d 599, 599–602 (1985). We briefly discuss the facts relevant to this habeas action.

On February 5, 1981, Griffin was involved in the shootings and murders of Charles Sims, Christi Smith and Ronald Walker, and the nonfatal shooting of Charles Kellick. The events that occurred that day were constructed from the testimony of Kellick who survived the shooting, and from the dying declarations of Walker, as reported by bystanders. Griffin and his co-defendant Jimmy Lee Smith ("Smith") entered an apartment occupied by Christi Smith and Walker. After several minutes, Griffin shot Sims, who had recently arrived at the apartment. As Kellick fled, he was shot in the back of the head. As Kellick lay on the floor, Smith shot him in the face.[1] Walker, although shot five times, managed to make his way to a nearby

---

\* The Honorable Robert A. Grant, of the Northern District of Indiana, sitting by designation.

1. Remarkably, Kellick survived both shots. Although immediately after the incident at the hos-

pital he could not remember who had shot him, Kellick later identified both Griffin and Smith.

grocery store, where, in a dying declaration, he stated that "Lee," later identified as Griffin, had shot Christi Smith and him.[2]

Griffin originally retained Ralph Derango ("Derango") to represent him. After consulting with Griffin, Derango interviewed the investigating officer L.C. Moore ("Moore") who explained to Derango that Griffin denied actually killing anyone. Griffin claims that he explained to Derango that he was present at the murder scene but took no part in the killings and that he in fact had tried to stop co-defendant Smith. Derango explained this to the police and attempted to plea bargain but was unsuccessful in his efforts. The police arrested co-defendant Smith several days later. Smith had retained Marvin Goldenhersh ("Goldenhersh") as his attorney. Griffin's family then discharged Derango and hired Goldenhersh to represent Griffin as well.[3]

After pretrial hearings in which Goldenhersh expressly denied any possible conflict of interest, the case was tried to a jury. Both defendants offered an alibi defense at trial. Griffin took the stand in his own defense. Co-defendant Smith did not testify because of his prior criminal record. The jury returned guilty verdicts against both defendants. Griffin's post-trial motions were denied. The state circuit court then denied Griffin's post-conviction petition, filed pursuant to the Illinois Post–Conviction Hearing Act, Ill.Rev.Stat.1981, ch. 38, par. 122–1, which alleged ineffective assistance of counsel because of a conflict of interest arising out of joint representation. Griffin claimed that after he told Goldenhersh that he had witnessed the shootings but had not himself committed the crimes, Goldenhersh advised him as to the legal theory of accountability, explaining to Griffin that this defense would not work and he would be convicted of the crimes. Griffin claims he then created the alibi defense having been told that the "nonparticipant bystander" defense would fail. On direct appeal, the Illinois Appellate Court rejected all of defendant's claims, including

the ineffective assistance of counsel argument. 124 Ill.App.3d 119, 79 Ill.Dec. 501, 463 N.E.2d 1055 (5th Dist.1984). On post-conviction appeal the Illinois Appellate Court, however, reversed and remanded for a new trial, concluding that Goldenhersh's joint representation of the two defendants denied Griffin effective assistance of counsel. 124 Ill. App.3d 169, 79 Ill.Dec. 509, 463 N.E.2d 1063 (5th Dist.1984). The Illinois Supreme Court reversed this decision and held that Griffin was not in fact denied effective assistance of counsel by the joint representation of the two defendants. 109 Ill.2d 293, 93 Ill.Dec. 774, 487 N.E.2d 599 (1985).

Griffin then filed a *pro se* petition for post conviction relief, which counsel amended several times before it was ultimately denied by the trial court. Griffin then filed this federal habeas action to the district court. The district court denied the writ. From this, Griffin appeals.

## II.

■■■ Federal courts are authorized to grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the Constitution of the United States. 28 U.S.C. § 2254. We extend great deference to the district court's findings of fact and review them under a clearly erroneous standard. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *McGeshick v. Fiedler,* 3 F.3d 1083, 1087 (7th Cir.1993); *see* Fed.R.Civ.P. 52(a). We subject the district court's findings of law and mixed findings of law and fact to *de novo* review. *Brewer v. Aiken,* 935 F.2d 850, 855 (7th Cir.1991).

■■■ Griffin alleges that he was denied his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution because of Goldenhersh's joint representation of him and his co-defendant. The Sixth Amendment guarantees criminal defen-

---

**2.** Other conflicting testimony indicated that Walker, before he died, stated that Lee's friend had shot him.

**3.** In his video deposition prior to the district court's federal habeas hearing, Goldenhersh testified that he was uncertain as to which defendant had first retained him.

dants the right to a fair trial and, as a necessary corollary, the right to counsel.[4] The Supreme Court repeatedly has recognized that the "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970)); *see also Cates v. Superintendent Indiana Youth Center,* 981 F.2d 949 (7th Cir.1992). The rudimentary standard in assessing the effectiveness of counsel is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064; *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir. 1990).

◼◼◼ The Sixth Amendment guarantee of effective assistance of counsel encompasses the right to conflict-free representation. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Although a possible conflict may exist in many instances of multiple representation, *see Cates,* 981 F.2d at 953, joint representation at trial is not a *per se* constitutional violation. *United States ex rel. McCall v. O'Grady,* 908 F.2d 170, 172 (7th Cir.1990); *see Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177–78, 55 L.Ed.2d 426 (1978). The Supreme Court in *Cuyler* established a test for evaluating claims of ineffective assistance of counsel where the defendant did not object to joint representation at trial. In order to prove ineffective assistance of counsel, the defendant must demonstrate: (1) an actual conflict of interest existed between co-defendants; and, (2) the conflict adversely affected the performance of the defendant's attorney. *Cuyler,* 446 U.S. at 348; *Cates,* 981 F.2d at 953; *O'Grady,* 908 F.2d at 173.

◼◼◼ The criminal defendant has the burden of showing specific instances where counsel could and would have done something different had he represented the defendant separately. *Thompkins v. Cohen,* 965 F.2d 330, 332 (7th Cir.1992); *United States v.*

*Cirrincione,* 780 F.2d 620, 630–31 (7th Cir. 1985). A convicted defendant has the burden of establishing not only that his counsel's performance was deficient, but also that the deficient performance prejudiced the defense. *O'Grady,* 908 F.2d at 173. This Court has acknowledged that habeas petitioners raising ineffective assistance claims must clear a "high hurdle." *O'Grady,* 908 F.2d at 173 citing *Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir.1987). "Indeed, we expect that few petitioners will be able to pass through the 'eye of the needle' created by *Strickland.*" *Sullivan,* 819 F.2d at 1391 (quoting *Matthew* 19:24).

In the instant case, the district court, with an evidentiary hearing, adopted the Illinois Supreme Court's version of the facts. The district court also accepted Goldenhersh's testimony regarding his knowledge of alternative defenses other than the alibi defense. The district court stated:

> After being retained, Mr. Goldenhersh interviewed the petitioner and his co-defendant. During the interview, the facts pertaining to an alibi defense were given to Marvin Goldenhersh as the petitioner's attorney. In his deposition, Marvin Goldenhersh stated that only facts relating to the alibi defense were given to him while preparing for trial. *Mr. Goldenhersh further stated that he never discussed the theory of accountability with the petitioner* and did not tell him that he would be found guilty if he had admitted being at the scene. In his video deposition, Mr. Goldenhersh denied that the petitioner had given him any facts which would have suggested his presence at the crime scene or which would have suggested an antagonistic defense. Accordingly, at trial, Mr. Goldenhersh presented the alibi defense and, consistent with that defense, cross-examined witnesses in support of that theory.

(emphasis added). Relying on the principles enumerated in *Cuyler* and *Strickland* the district court proceeded to render its conclusions of law, denying Griffin's petition.

---

4. The Sixth Amendment reads: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

██ Notwithstanding the district court's examination of Goldenhersh's deposition and its findings of fact, we need clarification on apparent inconsistencies between these findings and the record. The district court concluded that "Mr. Goldenhersh further stated that he never discussed the theory of accountability with the petitioner [Griffin]. . . ." However, Goldenhersh, in his video deposition, indicated on several occasions that he did in fact discuss the theory of accountability with Griffin:

[Question:] Would you have had any conversations with Mr. Griffin . . . about the legal theory of accountability?

[Answer:] Yes. Yes, . . . Griffin . . . mentioned, that he had made statements to Durango, and uh, and what would be the effect of that testimony. So I told him as I recall that I couldn't predict the effect of the testimony and *I did explain to him about accountability and, uh, that was it.*

(emphasis added). Later in the deposition Goldenhersh stated, "I know we did discuss accountability and I explained it to him." In responding to a question regarding his discussion with Griffin, Goldenhersh noted, "I explained to him generally about accountability . . ." Subsequently, Goldenhersh noted that "I had to tell him that . . . there was the possibility that he could be held accountable and found guilty on the basis of accountability." After that, Goldenhersh stated that "there was the possibility that he could be found guilty on the basis of accountability." We are unable to harmonize the district court's findings that Goldenhersh and Griffin never discussed accountability with the record of Goldenhersh's deposition.

In addition to the inconsistencies regarding the accountability issue, the district court's opinion does not appear compatible with other aspects of the record including Goldenhersh's deposition. The district court concluded that "Marvin Goldenhersh stated that only facts relating to the alibi defense were given to him while preparing for trial." Goldenhersh's deposition, however, leaves us with a different impression. Although Goldenhersh unequivocally stated that Griffin only gave him one version of the events—the version supporting the alibi defense—Gol-denhersh's other statements indicate that he had access to a significant amount of evidence which pointed to another potential defense. Goldenhersh testified that he read the investigating officer's report, which presented a different version of the facts than that which Griffin gave to Goldenhersh. Goldenhersh stated that he had conferred with Derango, who had conducted plea negotiations based on Griffin's nonparticipation, regarding the defense. Goldenhersh asserted that he had knowledge of the positive identifications of the defendants at the scene of the crime during the crime, which would indicate that Griffin was in fact at the scene and not elsewhere. Goldenhersh testified that he knew of the plea negotiations. Finally, Goldenhersh testified that Griffin's family insisted that Griffin did not commit the actual crime. Thus, although the district court states that Goldenhersh testified that "only facts relating to the alibi defense were given to him while preparing for trial," Goldenhersh's testimony indicates that he may have been given facts relating to a nonparticipant bystander defense.

The district court did not spell out in its opinion how the law, when applied to these facts, led to the conclusion that Griffin had effective assistance of counsel. Although the district court did discuss the relevant body of Sixth Amendment law, the court did not explain how that law applies to the facts in this case. We neither explicitly nor implicitly contend that the district court improperly applied the law. Rather, we seek clarification as to its factual findings and an explanation as to whether this affects its conclusions of law.

Thus, because we cannot resolve apparent conflicts between the district court's findings and Goldenhersh's deposition as to several significant points, we REMAND to the district court for a more searching examination of the record consistent with this opinion.

REMANDED.