Ramiro HERNANDEZ, Petitioner,

v.

Keith COOPER, Warden, Joliet
Correctional Center,
Respondent.

No. 97–C–1296.

United States District Court,
N.D. Illinois,
Eastern Division.

May 12, 1999.

Ramiro Hernandez, Joliet, IL, pro se.

Joel T. Pelz, Jerold Sherwin Solovy, Susan E Moore, Eric J. Dorkin, Jenner & Block, Chicago, IL, for Ramiro Hernandez, petitioner.

Catherine F. Glenn, Illinois Attorney General's Office, Chicago, IL, for Kieth Cooper, Warden, respondent.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Ramiro Hernandez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which this Court denied on November 2, 1998. *Hernandez v. Cooper,* 28 F.Supp.2d 498 (N.D.Ill.1998) ("*Hernandez I*"). The Court will assume that the reader is familiar with our opinion in *Hernandez I.* On December 31, 1998, this Court granted Hernandez's motion to reconsider the November 2nd Order to the extent that the Court allowed Hernandez to fully reassert his ineffective assistance of counsel arguments. After thoroughly reviewing the record with the benefit of additional briefing, we deny his petition for a writ of habeas corpus in its entirety.

Hernandez alleges that his trial counsel was constitutionally defective for 1) failing to move for a severance based on antagonistic defenses; 2) forcing Hernandez to testify; 3) failing to object to the admission of the weapons found in Santisteven's house; and 4) failing to present a viable alibi defense. Hernandez also claims that he received ineffective assistance of appellate counsel for failing to challenge trial counsel's performance. The State argues that Hernandez has procedurally defaulted his claims, and even if the Court were to reach the substance of Hernandez's claims, they are lacking in merit. We will address each argument in turn.

## I. Exhaustion and Procedural Default

Before considering the merits of Hernandez's ineffective assistance of counsel claim, this Court must first determine whether Hernandez has exhausted all available state remedies and fairly presented his constitutional claims to the state courts. *Momient–El v. DeTella,* 118 F.3d 535, 538 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 448, 139 L.Ed.2d 384 (1997). If Hernandez fails to satisfy either of these requirements, "the petition is barred either for a failure to exhaust state remedies or for a procedural default." *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988).

■ The procedural default inquiry focuses on whether the petitioner's federal claims were "fairly presented" to the state courts. *Jones v. Washington,* 15 F.3d 671, 675 (7th Cir.1994); *see also Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir. 1992). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992).

■ Procedural default also occurs when the state did not address the petitioner's federal claims because the state court's decision rested on an adequate and independent state law ground. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A petitioner who fails to meet the state's procedural requirements for presenting his federal claims deprives the state courts of an opportunity to address those claims. *See Coleman,* 501 U.S. at 731–32, 111 S.Ct. 2546. Notwithstanding a procedural default, habeas review may still be available if the petitioner can show cause for the default and actual prejudice, or demonstrate that a failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* at 750, 111 S.Ct. 2546.

The State concedes that Hernandez exhausted all available state remedies, but argues that Hernandez defaulted his ineffective assistance claim because the Illinois courts rejected this claim on adequate and

independent state grounds; specifically, waiver and res judicata. We disagree because the Illinois appellate court reviewing Hernandez's post-conviction petition addressed the merits of Hernandez's ineffectiveness claims. Therefore, procedural default does not apply.

■ "When a state court relies explicitly on a state procedural default rule in declining to review a federal question, a federal court sitting in habeas corpus jurisdiction must accept that determination as an 'adequate and independent state ground' for decision of the issue." *Williams v. Chrans*, 894 F.2d 928, 934 (7th Cir.1990) (quoting *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). However, "if the last state court to be presented with a particular claim reaches the merits, it removes any bar to federal court review that might otherwise have been available." *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also Momient–El v. DeTella*, 118 F.3d 535, 539 (7th Cir.1997) (finding that petitioner's ineffective assistance of counsel claim was not procedurally defaulted, even though he'd failed to raise it on direct appeal, because the post-conviction state court addressed the claim on its merits).

■ In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735, 111 S.Ct. 2546. Applying this presumption, courts in this district have found no procedural default where the last state court to address a petitioner's federal claims did not expressly rely on independent and adequate state grounds. *See, e.g., Brooks v. Page*, 1997 WL 232764, *2–3 (N.D.Ill. May 2, 1997). For example, the *Brooks* court found that the Illinois appellate court's disposal of the petitioner's federal claims as frivolous and patently without merit "evidences a disposition on the merits" because "[i]t is not clear that this decision was based solely on an independent and adequate state ground." *Id.* at *3.

■ In the case at bar, the Illinois appellate court on post-conviction review rejected the trial court's finding that petitioner's ineffective assistance claims were barred by res judicata and waiver. The appellate court affirmed the trial court's dismissal of Hernandez's post-conviction petition, however, on the grounds that Hernandez's claims were frivolous and patently without merit. Accordingly, we find that the last state court to address Hernandez's ineffective assistance claims did not rely exclusively upon state law to dispose of his claims, and, therefore, procedural default does not apply. Before assessing the merits of Hernandez's claims, we will set forth the standards that guide our inquiry.

## II. Habeas Standards

Hernandez filed his habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA) and, therefore, AEDPA applies to his claims. *See Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA requires federal courts to give "greater deference to the determinations made by state courts than they were required to under previous law." *Spreitzer v. Peters*, 114 F.3d 1435, 1441 (7th Cir.1997).

Under AEDPA, federal courts must deny habeas relief with respect to any claim adjudicated on the merits in the state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

The "contrary to" provision of § 2254(d)(1) applies to questions of law and the Court reviews such issues de novo. *Lindh v. Murphy,* 96 F.3d 856, 877 (7th Cir.1996), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Conversely, the "unreasonable application" provision applies where mixed questions of law and fact arise, and "tells federal courts: Hands off, unless the [state court] judgment is based on an error grave enough to be called 'unreasonable'." *Id.* at 870. A state court reasonably applies clearly established Supreme Court case law if its application is "at least minimally consistent with the facts and circumstances of the case." *Spreitzer,* 114 F.3d at 1442; *see also Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997); *Hall v. Washington,* 106 F.3d 742, 748–49 (7th Cir.) ("[t]he statutory 'unreasonableness' standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes."), *cert. denied,* —— U.S. ——, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997). Having set forth the applicable standard, we will now address the merits of Hernandez's ineffective assistance of counsel claim.

### 1. Ineffective Assistance of Trial Counsel

The seminal case for assessing ineffective assistance of counsel claims is *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To state a valid claim under *Strickland,* Hernandez must show both 1) that his counsel's performance was objectively unreasonable; and 2) but for his attorney's deficient representation, the outcome would have been different. *Id.* at 687–88, 104 S.Ct. 2052. There exists a strong presumption that a criminal defendant's counsel rendered assistance that fell within an objective standard of reasonableness. *Kubat v. Thieret,* 867 F.2d 351, 359 (7th Cir.1989).

The Seventh Circuit has repeatedly stated that habeas petitioners raising ineffective assistance of counsel claims must clear a "high hurdle." *Griffin v. Camp,* 40 F.3d 170, 173 (7th Cir.1994). "Indeed, we expect that few petitioners will be able to pass through the 'eye of the needle' created by Strickland." *Sullivan v. Fairman,* 819 F.2d 1382 (7th Cir.1987); *see also United States v. Jimenez,* 992 F.2d 131, 134 (7th Cir.1993) (stating that habeas petitioners face an uphill battle in establishing a successful ineffective assistance of counsel challenge).

Three of Hernandez's four ineffective assistance of trial counsel claims are readily disposed of [1]—only counsel's failure to move for a severance based on antagonistic defenses requires significant discussion. We agree with the Illinois appellate court that trial counsel's decisions to put Hernandez on the stand and not to call Hernandez's family members to testify to an alibi defense were not so objectively unreasonable or prejudicial as to offend the Constitution. *See Serfling v. United States,* 958 F.Supp. 389, 392 (N.D.Ill.1997) ("quibbles with trial strategy can not, as a matter of law, form the basis of such a claim."). The Illinois appellate court reasoned that

> [T]here is no evidence presented that petitioner was forced to testify.... The decision whether to present a particular witness is generally a matter of trial strategy, which must be given great deference by the reviewing court. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052 ... *People v. Bryant,* 128 Ill.2d 448, 458, 132 Ill.Dec. 415, 539 N.E.2d 1221 (1989) .... A strong presumption exists that the attorney's performance was the product of sound trial strategy and not of incompetence.... [T]he evidence against petitioner was overwhelming. That evidence consisted of the eyewitness identification of Cruz and the trial

1. Despite the fact that the Court has offered Mr. Hernandez yet another chance to give substance to his bare allegation that trial counsel was ineffective, Petitioner's additional briefing focuses almost exclusively on his severance argument.

testimony of Santisteven. Even with the potential alibi testimony by members of petitioner's family, the outcome of the trial would not have been different.

*People v. Hernandez,* Rule 23 Order, No. 1–93–3969, at pp. 7–8 (Ill.App.Ct. June 19, 1996).

The Illinois appellate court's ruling is fully consistent with well established federal law. We accept as true the state court's finding that there was no evidence that trial counsel forced Hernandez to testify. Following Santisteven's testimony, trial counsel was confronted with the difficult choice of allowing Hernandez to respond to Santisteven's accusations or preserving review of his directed verdict motion on appeal. Counsel's decision to put Hernandez on the stand following Santisteven's damaging testimony was clearly a matter of trial strategy that we will not second guess on habeas review. *United States ex rel. Schlager v. Washington,* 887 F.Supp. 1019 (N.D.Ill.1995) ("[W]e will not function as a 'Monday morning quarterback' and call the plays that we think trial counsel should have called.") aff'd. 113 F.3d 763 (7th Cir. 1997). We cannot say that trial counsel's decision, or the Illinois appellate court's assessment of the decision, was unreasonable.

■ Similarly, even if Hernandez could demonstrate that objectively reasonable counsel would have called Hernandez's family members to support his alibi defense, we cannot conclude that the Illinois appellate court's finding of no prejudice was unreasonable. The evidence against Hernandez was strong—Cruz's testimony directly contradicted Hernandez's alibi defense by placing Hernandez at the scene of the crime, and Santisteven testified that Hernandez fired the fatal shots. In light of this compelling evidence, we must uphold the Illinois appellate court's finding that his attorney's failure to put Hernandez's family members on the stand did not impact the outcome of his trial. *See United States v. Hubbard,* 22 F.3d 1410, 1422–23 (7th Cir.1994) ("[G]iven the overwhelm-

ing evidence, a new trial is unlikely to lead to an acquittal."). Accordingly, Hernandez is not entitled to habeas relief on these grounds.

■ Hernandez's third attack on his trial counsel's performance—that counsel unreasonably failed to object to the admission of the weapons found in Santisteven's house—fares no better. The Illinois appellate court determined that Hernandez was not prejudiced by his trial counsel's failure to object, even though it resulted in waiver of this issue on appeal. The court noted that Santisteven did preserve the issue for appellate review, and the appellate court concluded that the admission of the weapons evidence was harmless error. *Hernandez,* No. 1–93–3969 at * 7. We agree finding that admission of this evidence was not prejudicial to Hernandez because it implicated only Santisteven, not Hernandez, in the crime. Accordingly, this argument fails on the merits as well.

■ Finally, we turn to Hernandez's most compelling argument: trial counsel's representation was constitutionally deficient because he failed to move for severance based upon antagonistic defenses. Hernandez asserts that this Court owes no deference to trial counsel's decision not to move for severance on this basis because it was not the product of trial strategy. Rather, Hernandez argues, trial counsel failed to argue antagonistic defenses because he was unreasonably unaware that Santisteven would implicate Hernandez in the crime.

We agree that counsel's representation in this regard fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052 (reviewing courts owe deference to only those strategies that emerge from reasonable investigation and deliberation). Had Hernandez's trial counsel argued for severance on the basis of mutually antagonistic defense, the motion likely would have been granted. *People v. Braune,* 363 Ill. 551, 2 N.E.2d 839, 842 (1936). Moreover, raising such an

argument in no way would have detracted from the viability of his motion to limit the admissibility and use of Santisteven's confession. We cannot attribute counsel's decision not to argue antagonistic defenses to any rational trial strategy. Rather, we can think of no plausible explanation for failing to raise such an argument other than trial counsel's lack of trial preparation.

It is undisputed that trial counsel was aware before trial that Santisteven would attempt to limit his liability by pointing the finger at Hernandez; Hernandez's arrest came on the heels of Santisteven's confession to the police implicating Hernandez. Any doubt about the severity or effect of Santisteven's testimony should have been erased before trial. At a pretrial hearing, Santisteven testified extensively about his and Hernandez's role in the murder, placing much of the responsibility on Hernandez's shoulders. This hearing was not conducted in secret; Hernandez's counsel was present initially but chose not to remain when Santisteven's attorney failed to arrive on time. Despite the red flag raised by Santisteven's confession, Hernandez's counsel failed to review the record or request a transcript of the proceedings. *See Kenley v. Armontrout,* 937 F.2d 1298, 1304 (noting that counsel has a duty to take basic steps for trial preparation). Illinois severance law was well established decades before Hernandez's trial and reasonable counsel should have argued antagonistic defenses in moving for severance. *Braune,* 2 N.E.2d at 842 (severance required where codefendants' defenses are mutually antagonistic).

Counsel has a duty to undertake basic trial preparation in presenting his client's defense. *See Moawad v. Anderson,* 143 F.3d 942 (5th Cir.1998) (finding that trial counsel's failure to object to presumed malice instruction, an objection the court would have likely sustained, rendered his assistance deficient). However, because trial counsel was ignorant of Santisteven's impending antagonistic defense counsel was unprepared, and thus unable, to make a strategic decision regarding severance.

Therefore, we find that trial counsel's failure to move for severance on the basis of antagonistic defenses fell below an objectively reasonably standard of assistance. *Williams v. Washington,* 59 F.3d 673, 680–81 (7th Cir.1995) (finding that courts can attribute decisions to rational trial strategy only if counsel engaged in sufficient pretrial preparation). Having found that trial counsel's representation did not comport with constitutional requirements, the critical question is whether Hernandez can demonstrate the requisite prejudice.

Hernandez argues that he has demonstrated prejudice because Illinois caselaw clearly would have required the trial court to grant his severance motion had trial counsel raised the antagonistic defense argument. *See, e.g., People v. Rodriguez,* 289 Ill.App.3d 223, 223 Ill.Dec. 807, 680 N.E.2d 757, 766 (1997) (finding that severance is required when codefendant uses finger-pointing defense). Hernandez contends that the reasonable probability of success on his severance motion demonstrates the requisite prejudice to satisfy *Strickland.* We disagree.

The United States Supreme Court has held that mutually antagonistic defenses do not mandate severance. *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). In *Zafiro,* the Supreme Court affirmed the Seventh Circuit's denial of habeas relief even though the petitioner demonstrated that severance was warranted because his codefendant's defense was antagonistic. 506 U.S. at 537–39, 113 S.Ct. 933. The Court ruled that "[m]utually antagonistic defenses are not prejudicial per se" and that severance is required "*only* if there is a serious risk that a joint trial would *compromise a specific trial right* of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. 933 (emphasis added). This risk is apparent when defendants have markedly different degrees of culpability, when evidence probative of guilt but inadmissible against the defendant is neverthe-

less admitted against a codefendant, or if exculpatory evidence otherwise admissible in the defendant's trial is unavailable in a joint trial, such as when the source of the exculpatory evidence is the codefendant's wife, who could not be forced to testify in a joint trial. *Id.* (noting that these examples are not exclusive). Finding that the mere existence of antagonistic defenses did not render the trial constitutionally unfair, the Court affirmed the denial of habeas relief.

Despite the substantial similarities[2], Hernandez insists that *Zafiro* is readily distinguishable because, unlike the case at bar, the *Zafiro* defenses were merely conflicting and not antagonistic. Each *Zafiro* codefendant claimed that he or she was unaware that a suitcase recovered in one defendant's home contained drugs; merely suggesting that the other codefendants must have known the suitcase's contents. Relying heavily upon Justice Stevens' concurrence, Hernandez contends that his trial was fundamentally unfair because his codefendant was "in effect a second prosecutor," *id.* at 544, 113 S.Ct. 933 (Stevens concurring), and that "[t]he existence of this extra prosecutor is particularly troublesome because defense counsel are not always held to the limitations and standards imposed on the government prosecutor." *Id.* at 544 n. 3, 113 S.Ct. 933 (Stevens concurring). Therefore, Hernandez claims, he has demonstrated the requisite prejudice.

We find this argument unpersuasive for two reasons. First, we note that Hernandez relies upon those portions of the concurrence where Justice Stevens' parts company with the majority.[3] In discussing the prejudice that arises when mutually antagonistic defenses exist, Justice Ste-

vens expressly disagreed with the majority's holding: "I would save for another day evaluation of the prejudice that may arise when the evidence or testimony offered by one defendant is truly irreconcilable with the innocence of a codefendant." *Id.* at 543, 113 S.Ct. 933. But the majority did not confine its opinion in the manner Justice Stevens' advocated, and choose to address the issue head-on. Hernandez's argument would pass muster only if Justice Stevens had persuaded the *Zafiro* majority to confine its analysis to conflicting defenses.

Second, Hernandez has failed to show that a specific trial right was compromised. The *Zafiro* majority expressly found that the introduction of a codefendant's accusatory testimony does not compromise the fairness of the prosecution. The Supreme Court explained that

a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.

*Id.* at 540, 113 S.Ct. 933. Like the petitioner in *Zafiro*, Hernandez has failed to demonstrate that a "specific trial right" was compromised. *See Zafiro,* 506 U.S. at 540, 113 S.Ct. 933 (stating that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."). Moreover, Hernandez's attempt to circumvent the "specific trial right" requirement by arguing that mutually antagonistic defenses is

2. Hernandez does not point to a specific trial right that was compromised due to the joint trial. Rather, Hernandez's argument mirrors the *Zafiro* defendants' contention that the prejudice inherent in not severing the trial of mutually antagonistic codefendants warrants habeas relief.

3. In concurring with the majority's result, Justice Stevens stated that "I agree with the Court that a 'bright-line rule, mandating sev-

erance whenever codefendants have *conflicting* defense' is unwarranted" and that "I believe the District Court correctly decided the severance motions in this case." *Id.* at 545, 113 S.Ct. 933 (emphasis added). However, Justice Stevens' quotation of the Court's "bright-line rule" holding is actually a quotation of the Petitioner's brief—not the majority's holding that "*mutually antagonistic* [not *conflicting*] defenses are not prejudicial per se" *Id.* at 538, 113 S.Ct. 933.

854

per se prejudicial is without merit; the *Zafiro* Court made clear that a codefendant's otherwise admissible testimony does not render a petitioner's trial fundamentally unfair.

Undeterred, Hernandez counters that the Seventh Circuit's subsequent ruling in *Williams v. Washington,* 59 F.3d 673 (7th Cir.1995), reveals that our interpretation of *Zafiro* is too broad. Hernandez claims that *Williams* supports his contention that the mere fact that the severance motion would have been granted. had his trial counsel argued antagonistic defenses is sufficient to establish prejudice under *Strickland.* Even a cursory review of *Williams* reveals that it is Petitioner who has overstated the relevant caselaw.

In *Williams,* the Seventh Circuit granted the petitioner's request for habeas relief, finding that her representation at trial was constitutionally deficient. Petitioner's conviction for indecent liberties with a child was based on two critical pieces of evidence: 1) the accuser's testimony, which was corroborated by a letter the accuser had written at the time of the alleged assault; and 2) the written confession petitioner's codefendant gave to police. 59 F.3d at 682. The court noted that even though trial counsel "had at his disposal the tools to eliminate or dilute the effects of both of these," counsel unreasonably failed to do so. *Id.* at 682–83. In discussing one of counsel's numerous shortcomings,[4] the court found that had counsel moved to sever petitioner's trial from her codefendant's trial, the trial court likely would have granted the motion and counsel could have protected petitioner

from the effects of her codefendant's confession. 59 F.3d at 683 (noting that counsel also should have moved to have the codefendant's confession redacted to eliminate any references to the petitioner).

Significantly, the Seventh Circuit did not hold that the petitioner's showing that severance was reasonably probable was sufficient to establish prejudice. Rather, the court determined that "[a]ssessments of prejudice are necessarily fact-intensive determination peculiar to the circumstances in each case," noting that

> counsel's failure to protect [petitioner] from the effect of [codefendant's] confession, combined with his failure to prevent the prosecution from using the victim's letter to buttress her credibility, produced a trial significantly different than the one that [she] should have received.

*Id.* at 684.

Our interpretation of *Zafiro* is consistent with the *Williams* decision First, the *Williams* petitioner demonstrated that a specific trial right was compromised which affected the fundamental fairness of her trial. Specifically, although her codefendant's confession was probative of guilt, it could not have been read into evidence if the petitioner stood trial alone. Nevertheless, the state was able to introduce this evidence in a joint trial because it was admissible against the petitioner's codefendant. Thus, the petitioner did not establish prejudice simply because her counsel failed to make a successful severance argument, but because his failure to do so

4. The list of counsel's lapses is long: trial counsel failed to object to the admission of the accuser's damaging letter as hearsay; counsel was unaware of the existence of the letter—critical evidence of defendant's guilt—even though the prosecutor had previously turned this evidence over to him and was able to locate it in defense counsel's file during trial; trial counsel failed to impeach the accuser on the discrepancy between her trial testimony and her account of the crime in the letter; trial counsel failed to introduce DCFS files documenting the petitioner's fitness as a

parent; despite the accuser's school records characterizing the victim as "an inveterate liar" who "had a problem telling the truth" counsel failed to call witnesses to testify to her reputation for truthfulness; he failed to have petitioner's codefendant's confession excluded or redacted; and he failed to question the state's attorney who testified that when confronted with her codefendant's confession, the petitioner stated that "it must be true"—a confession that was never written down. In addition, counsel failed to introduce evidence that the accuser's hymen was still intact.

allowed inadmissible evidence to infect her trial.

Next, the Seventh Circuit relied upon the cumulative effect of counsel's significant lapses in determining that "absent counsel's errors, there exists a reasonable probability that the fact finder would have had a reasonable doubt concerning [petitioner's] guilt." *Williams*, 59 F.3d at 684. The court found prejudice because counsel's multiple trial errors—including his failure to obtain severance—prevented him from dismantling the state's case against his client, thereby undermining the court's confidence in the verdict. Because the outcome of Williams' trial would likely have been different had counsel rendered constitutionally adequate assistance, habeas relief was warranted.

Conversely, in the case at bar, Hernandez has demonstrated neither that a specific trial right was compromised nor that the outcome of his trial would have been different had he stood trial alone. First, we agree with the Illinois appellate court that Santisteven's testimony would have been admissible against Hernandez in a separate trial. Therefore, Hernandez's trial rights were not violated when Santisteven took the stand in their joint trial.

The fact that Hernandez would have had to contend with Santisteven's testimony in a separate trial dovetails into our ultimate prejudice inquiry—whether trial counsel's deficiency unconstitutionally impacted the outcome of Hernandez's trial. Santisteven's testimony would have been no less forceful if he were testifying as a government witness instead of as Santisteven's codefendant. The jury could presume that Santisteven's motives were tainted regardless of his role in Hernandez's trial. Therefore, unlike defense counsel's errors in *Williams*—which allowed critical evidence to be admitted and remain unimpeached—Hernandez was not prejudiced by his counsel's error. Simply put, while Santisteven's testimony was certainly damaging, it did not unfairly prejudice Hernandez's chances of obtaining an acquittal. Because we find that Hernandez cannot establish prejudice under *Strickland*, his petition for habeas corpus relief on this basis is denied.

## 2. Ineffective Assistance of Appellate Counsel

Our rejection of Hernandez's ineffective assistance of trial counsel claims does not bode well for Hernandez's contention that appellate counsel was ineffective for failing to attack trial counsel's competency on direct appeal. We note that defense counsel is not required to raise every conceivable argument on appeal *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel is afforded broad discretion in eliminating weaker arguments to emphasize the importance of more meritorious claims. *Id.* Moreover, having determined that Hernandez's ineffective assistance of trial counsel argument was lacking in merit, we find it would be impossible for Hernandez to establish that appellate counsel's omission was prejudicial. *See Moawad v. Anderson*, 143 F.3d 942, 949 (5th Cir.1998) ("Because the error at the appellate stage stemmed from the error at trial, if there was no prejudice from the trial error, there was also no prejudice from the appellate error."). Because the appellate court's determination of Hernandez's ineffective assistance of counsel claims was not the product of an unreasonable application of Supreme Court caselaw, we must deny his petition for habeas corpus.

## CONCLUSION

After careful consideration, this Court finds that Hernandez's ineffective assistance of trial and appellate counsel claims fail on their merits. For all of the reasons stated herein, Hernandez's motion to reconsider (39–1), to amend judgment (39–2) and for certification pursuant to Circuit Rule 57 (56–1) are all denied. Therefore,

Hernandez's petition for a Writ of Habeas Corpus is denied.