Jaime MACIEL, Petitioner,

v.

Lamark CARTER,[1] Respondent.

No. 97 C 0690.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 9, 1998.

---

1. When Maciel filed his petition, he was in the custody of Thomas Page, Warden of the Menard Correctional Center. Maciel has since been transferred to the custody of Lamark Carter, Warden of the Joliet Correctional Center, thus this Court substitutes Lamark Carter as the respondent. *See Henderson v. DeTella*, 97 F.3d 942, 942 (7th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1471, 137 L.Ed.2d 683 (1997).

M. Jacqueline Walther, Kielian & Walther, Chicago, IL, for Petitioner.

Bridget Linda Field, Illinois Attorney General's Office, Criminal Appeals Division, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Petitioner Jaime Maciel was convicted of first degree murder and burglary and sen-

tenced to 60 years' imprisonment. Maciel unsuccessfully sought both direct and collateral review of his conviction and sentence. Now he petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons set forth below, we deny Maciel's petition.

## RELEVANT FACTS

■ Because the Illinois appellate court has fully set forth the underlying facts, we will summarize them here.[2] On March 28, 1991, Dansby Maye and his partner, Donald Buffa, the victim, were delivering beer to a lounge on Commercial Street, in Chicago, Illinois. Maye and Buffa brought in the first load and, while Maye remained in the lounge, Buffa returned to the truck. Maye heard a gunshot, returned to the truck, and discovered that Buffa had been shot.

Maciel was arrested and later confessed. He was 17 years old. The circumstances surrounding Maciel's arrest and confession were contested both before and during trial. At a pretrial hearing on Maciel's motion to quash the arrest and suppress his confession, Officer John Botich testified that he and three other officers were assigned to investigate the shooting. As they canvassed the neighborhood, they learned that three individuals, "Mou," "Ger Bear," and "Jimmy Z," may have been involved in the shooting, and that Dominick Anaya may have further information. Anaya informed that "Mou," "Ger Bear" and "Jimmy Z." were members of the Young Bloods, a gang to which he also belonged, and confirmed that they would have information concerning the shooting. Anaya's sister, Nina Zavala, told Officer Botich that she dated a member of the Young Bloods and "knew for positive that Jimmy Maciel was the shooter." She gave the officers Maciel's address. She also stated that Maciel used the name "Jimmy Z." Zavala expressed concern for her and her brother's safety; Officer Botich assured her that he

would try to keep her identity confidential. Thus, in his report, he referred to them as "concerned citizens" and a "confidential informant".

On the basis of Zavala's statement, Officer Botich and the other officers went to Maciel's house. Officer Botich testified that Maciel's mother let them into the house, that Maciel voluntarily accompanied them to the station, that Maciel was never handcuffed and was free to leave at any time, and that he was arrested only after they reached the station and learned that Maciel's co-defendants, Gerardo Delgado ("Ger Bear") and Maurilio Moreno ("Mou"), had implicated him in the shooting. Maciel, on the other hand, testified that the officers entered his house without a warrant, grabbed him, and took him outside where they placed him in handcuffs and under arrest. His family corroborated his testimony.

While at the station, the officers told Maciel that Delgado and Moreno had implicated him in the shooting. Soon thereafter, Maciel signed an eleven page sworn confession, in which he admitted to shooting Buffa.

The state trial court found that the officers should have attempted to secure a warrant before entering Maciel's house, and therefore suppressed Maciel's arrest. The court further found, however, that the information supplied by Zavala provided probable cause to arrest Maciel. Moreover, "independent information" obtained at the police station (i.e., that Maciel's co-defendants had implicated him) "re-established" probable cause. For these reasons the trial court refused to suppress Maciel's confession.

The court held a second pretrial hearing after Maciel filed a motion for reconsideration. At this hearing, Zavala testified that she never spoke to the police, that she did not know Maciel's address, and that her brother and the defendants were not gang members. She stated that after hearing her

---

**2.** Unless otherwise indicated, the following facts are gleaned from the Illinois appellate court opinion. *People v. Maciel*, 275 Ill.App.3d 1131, 229 Ill.Dec. 885, 692 N.E.2d 874, 1995 WL 939067, No. 1–93–0688 (Ill.App.Ct. 1st Dist. Nov. 14, 1995). We presume that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The presumption of correctness can be rebutted only by the petitioner's showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Maciel does not attempt to make this showing.

name mentioned in connection with this case, she went to Maciel's house and executed an affidavit witnessed by Maciel's family. Officer Botich's testimony at the second hearing was consistent with his testimony at the previous hearing. The court denied the motion for reconsideration, finding that Zavala was sorely impeached and that she had a motive for testifying falsely; namely, she was afraid of retribution for fingering Maciel.

Prior to trial, the State successfully moved *in limine* to preclude Maciel from mentioning an alleged prior incident of police brutality in his opening statement. Specifically, on February 3, 1991, in the middle of the night, police officers allegedly entered Maciel's house without a warrant to arrest him. An altercation ensued during which his mother was pushed, Maciel and one of his brothers were beaten, and Maciel and another brother were arrested. The State feared that the defense would use this incident to attack Maciel's confession without presenting Maciel's own testimony. Similarly, the State successfully moved *in limine* to prevent witnesses other than Maciel from testifying about the February 3 incident before Maciel broached the subject himself under oath.

The State presented the following evidence at Maciel's trial. Officer Don Morrow testified that, while on duty and patrolling the area, he responded to an emergency call of "man shot." Seeing three Hispanic men walking together, Officer Morrow stopped his car. Although the men fled, Officer Morrow apprehended two of them, one of whom was Maciel. Neither of the men had any weapons, and they were both released. Officer Robert Lucas' testimony detailed the neighborhood canvass. He said that numerous people identified the three defendants—initially by their nicknames—as involved in the shooting. He also described the conversations the police had with Zavala and Anaya.

Detective James Dwyer provided the most compelling testimony. Initially, Detective Dwyer testified that three individuals identi-

fied Maciel's co-defendants, Delgado and Moreno, in a lineup: Armand Prieto, the owner of a tire shop located next to the lounge; Jose Santillan, Prieto's nephew; and another man.[3] Then, he testified about Maciel's confession. Detective Dwyer told the jury that, after waiving his *Miranda* rights, Maciel told Detectives Dwyer and Leahy that he was with Delgado and Moreno in the vicinity of the lounge. Maciel explained that he decided to steal a case of beer, but that Buffa came out of the lounge. Maciel confessed that he shot Buffa, but said he had aimed below the waist. Maciel said that he then ran and threw the gun into a dumpster. Detective Dwyer testified that Maciel gave this same statement to a court reporter and Assistant State's Attorney Jonathan Lustig. Maciel's statement was read to the jury.

Maciel took the stand in his defense to convey his state of mind at the time he confessed to killing Buffa. Maciel explained that he ran from the police on the day of the shooting because he was supposed to be in school. Maciel stated that the police arrested him at his home, without a warrant, sometime between 12:30 and 2:30 p.m. While at the police station, Maciel contended that he was threatened and physically abused while handcuffed to the wall; that he was placed in a lineup but no one identified him; and that Detective Dwyer threatened to kill him. Fearing further reprisal, he told the officers that he would do whatever they wanted him to do. Maciel testified that Detective Dwyer proceeded to coach him, telling him what to say when he gave the statement to the court reporter (the court reporter denied this). Maciel claimed that he never read the statement, and denied killing Buffa. Maciel's family confirmed his testimony regarding the February 3 incident.[4] After Maciel denied that he ever carried a gun, the State introduced a photograph of Maciel wearing a holster with a gun. Maciel responded that the gun was only a toy.

---

3. Both Santillan and Prieto recanted their lineup identifications at trial. Santillan, testified that he saw two individuals run from the scene, but he could not identify them. Prieto testified that he ducked when he heard the shot and did not see anything.

4. On rebuttal, one of the detectives involved in the February 3 incident testified that Maciel's family resisted the officers' attempt to arrest Maciel.

Zavala also testified and repeated the story that she told during the pretrial hearing on Maciel's motion for reconsideration. On cross-examination, the State asked her what would happen to her if anyone discovered that she had given information concerning the shooting. The court sustained the defense's objection. Zavala later stated that no-one had threatened her.

The jury found Maciel guilty of first degree murder and burglary. Following a sentencing hearing, the trial court sentenced Maciel to 60 years' imprisonment. The court specifically found that Maciel was without remorse or the potential for rehabilitation.

## PROCEEDINGS ON DIRECT APPEAL

Maciel appealed the judgment to the Illinois Court of Appeals, arguing that: (1) the trial court erred in failing to suppress his incriminating statements; (2) the trial court violated his due process rights by excluding reference to the February 3, 1991 incident in defense counsel's opening statement, and by requiring Maciel to testify as the first defense witness; (3) the trial court erroneously admitted certain evidence; (4) the State's insinuations that Maciel had intimidated witnesses violated his right to a fair trial; (5) the cumulative impact of the trial errors deprived him of a fair trial; and (6) his sentence was excessive. The Illinois appellate court rejected all of Maciel's contentions.

Maciel filed a petition for leave to appeal in the Illinois Supreme Court, which was denied without opinion on January 31, 1996. The United States Supreme Court denied Maciel's petition for a writ of certiorari on October 7, 1996.

## STATE POST–CONVICTION PROCEEDINGS

While his appeals were pending, Maciel submitted a petition for post-conviction relief to the trial court. In his pro se petition, Maciel reiterated several of the arguments presented in his direct appeal. Maciel's only new claim was that he received ineffective assistance of counsel. Maciel alleged that his attorney failed to investigate certain allegations concerning one of the investigators in Maciel's case, Sergeant O'Hara. Specifically,

Maciel contended that prior to the pretrial hearing on his motion to suppress, he learned that Sergeant O'Hara was suspended from the Chicago Police Department for his participation in improper interrogation procedures. Because Maciel claimed that his own confession was coerced, he thought that this information would be relevant to his case. Maciel reported the information about O'Hara to his attorney. Counsel, however, allegedly told Maciel that the information "didn't make a difference." The post-conviction court summarily denied the petition on January 19, 1996.

Maciel missed the February 18, 1996 deadline for appealing the denial of his post-conviction petition. Six months later, Maciel filed a motion for leave to file a late notice of appeal. The Illinois appellate court denied Maciel's motion on August 28, 1996.

## MACIEL'S PETITION FOR FEDERAL HABEAS RELIEF

In his petition, Maciel argues that he is entitled to habeas relief because the trial court: (1) did not suppress his confession which was allegedly obtained pursuant to an illegal arrest, and as a result of police coercion; (2) violated his constitutional right to present a defense, to effective assistance of counsel, and his right against self-incrimination by excluding any reference to the February 3 incident from the defendant's opening statement, and by requiring Maciel to testify as to his state of mind before introducing evidence on that incident; (3) violated his Sixth Amendment right to confront witnesses by admitting hearsay evidence; and (4) violated his right to a fair trial by allowing the introduction of prejudicial evidence. He also claims that the state engaged in prosecutorial misconduct; that his attorney rendered ineffective assistance by failing to investigate Sergeant O'Hara, and by not objecting to certain trial errors; and that his sentence was constitutionally excessive. For the reasons set forth below, we deny Maciel's petition.

## ANALYSIS

### I. Legal Standards

 Maciel filed this habeas petition on January 31, 1997, and therefore the recent

amendments to 28 U.S.C. § 2254 govern our decision. *See Long v. Krenke*, 138 F.3d 1160, 1163 (7th Cir.1998).[5] Before addressing the merits of a habeas petition, this Court must determine whether the petitioner has procedurally defaulted any substantive claims by failing to present them to the state courts. *See Moore v. Parke*, 148 F.3d 705, 708 (7th Cir.1998). A habeas petitioner may fall into the procedural default trap by failing to pursue all the appeals required under state law in a timely manner, or by neglecting to raise at the state level the federal claims asserted in the habeas petition. *See Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir.1998). Furthermore, "[i]f a state court declines to review a petitioner's claim because the petitioner has failed to satisfy a state procedural rule, that claim is procedurally defaulted and barred from federal habeas review." *Pisciotti v. Washington*, 143 F.3d 296, 300 (7th Cir.1998). A defaulted claim will not be barred, however, if the petitioner can demonstrate "both cause for the procedural error and prejudice resulting from that error," or that failure to the consider the claim would result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Robertson v. Hanks*, 140 F.3d 707, 709 (7th Cir.1998).

■ If a petitioner's claim is not procedurally barred, habeas relief may be awarded only where the state court's adjudication of the claim " 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " *See Long*, 138 F.3d at 1163

(quoting 28 U.S.C. § 2254(d)(1)). However, under § 2254(d)(2), habeas relief is possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." We presume that a state court's findings of fact are correct unless the petitioner demonstrates by clear and convincing evidence the contrary. 28 U.S.C. § 2254(e)(1). Having set forth the applicable standards, we will address each of Maciel's arguments in turn.

## II. Failure to Suppress

■ Maciel first alleges that the trial court improperly failed to suppress his confession even though it was obtained as the result of an illegal arrest.[6] The State contends that this claim, based on alleged Fourth Amendment violations, is not cognizable on federal collateral review. The key question is whether the State provided Maciel a full and fair opportunity to litigate this claim in state court. If it did, then Maciel may not seek relief in this habeas proceeding. *See Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). This is because "even if there has been an illegal search or seizure, there is no constitutional right to be vindicated through the writ of habeas corpus—there is no individual right to have improperly gathered evidence excluded from a criminal trial." *Holman v. Page*, 95 F.3d 481, 489 (7th Cir.1996).

■ A petitioner has been afforded a full and fair opportunity to litigate his claims in state court "when: (1) he has clearly in-

---

5. In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (the "AEDPA"), which "added to the existing habeas statute a new § 2254(d) ... prescribing the appropriate treatment of legal determinations made by a state court." *Lieberman v. Washington*, 128 F.3d 1085, 1091 (7th Cir.1997) (citation omitted).

6. In his habeas petition, Maciel also claims that his confession was coerced. Maciel abandoned this defense, however, in his direct appeal. There, in alleging that his prison sentence was excessive, Maciel argued that he indeed demonstrated remorse: "Following his arrest ·[Maciel] gave a voluntary statement concerning his involvement ... The giving of the statement itself

indicates the recognition of having done wrong and constitutes an expression of remorse." (Br. for Def.–Appellant at 66.) Maciel cannot have it both ways, i.e., argue that his defense is based on the fact that his confession was coerced, and then contend that the confession was voluntary in hopes of a reduced sentence. By asserting in his direct appeal that he voluntarily confessed, Maciel has waived his coercion argument. *See United States v. Valenzuela*, 150 F.3d 664, 667 (7th Cir.1998). Maciel attempted to resurrect the coercion issue in his post-conviction petition through his ineffective assistance claims. As discussed in Section IV, however, that claim is procedurally barred and without merit.

formed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts." *Weber v. Murphy*, 15 F.3d 691, 694 (7th Cir.1994) (citations omitted). Applying this test, we find that Maciel had a full and fair opportunity to litigate his Fourth Amendment claim in state court and, therefore, "federal habeas corpus review is barred by *Stone.*" *Turentine v. Miller*, 80 F.3d 222, 224–25 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 394, 136 L.Ed.2d 309 (1996).

The first prong of the test is undoubtedly met. Prior to trial, the court held two hearings on this issue, during which both Maciel and the State put forth witnesses as to the circumstances surrounding Maciel's arrest and subsequent incriminating statements. *Compare Weber*, 15 F.3d at 694 (stating that where trial court conducted "extensive suppression hearing" and petitioner and state were allowed to present evidence, first prong of test was met). Maciel also appealed his conviction and filed a 68–page brief with the Illinois appellate court, presenting the same arguments that he did in the trial court. We therefore find that the first prong of the *Weber* test was satisfied: Maciel "clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his fourth amendment rights." *Weber*, 15 F.3d at 694.

■ Because Maciel does not challenge the state court's analysis of the facts,[7] we move directly to the third prong of *Weber:* whether the Illinois appellate court applied the proper constitutional case law to the facts. The appellate court relied primarily on two cases—*New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)—in finding that the trial court did not err in failing to suppress Maciel's confession. In *New York v.*

*Harris*, the Supreme Court held, in circumstances remarkably similar to those of the case at hand, that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton.*" 495 U.S. at 21, 110 S.Ct. 1640. The appellate court found that, even though the police should have obtained a warrant before entering Maciel's home, probable cause existed to arrest Maciel based on Zavala's statement to the investigating officers that she "knew for positive" that Maciel was the shooter because her boyfriend belonged to the same gang as Maciel. That court noted, moreover, that Zavala's information was corroborated by both her brother and by others with whom the officers had spoken during their investigation. Because Maciel made his statement outside of his home and because the police had probable cause to arrest him, the state court concluded that, under *Harris*, the statement was admissible.

Alternatively, the appellate court held that even if the arrest was unlawful, Maciel's statement was properly admitted into evidence under *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In *Brown v. Illinois*, the Supreme Court propounded guidelines for determining whether inculpating statements are the product of an "exploitation of an illegal arrest" or "the product of a free will." 422 U.S. at 603, 95 S.Ct. 2254. The Court identified certain factors that are relevant to the inquiry: whether *Miranda* warnings were given, "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and … the purpose and flagrancy of the misconduct." *See id.* at 603–604, 95 S.Ct. 2254 (citations and footnotes omitted). The Court further held that the "voluntariness of the statement is a threshold requirement." *Id.* at 604, 95 S.Ct. 2254.

7. Maciel's real dispute is with the trial court's credibility determinations. For example, he argues that the trial court erroneously found that Zavala's testimony was "impeached sorely," and instead relied on Officer Botich's version of events surrounding Maciel's implication in the shooting. We will not review a state court's credibility determinations. *See Ford v. Ahitow*, 104 F.3d 926, 939 (7th Cir.1997) (a federal habeas court "cannot choose the evidence it prefers to emphasize or make its own credibility determinations.").

Applying these factors to Maciel's circumstances, the appellate court found that despite the relatively close temporal proximity of the statements (they were given "only hours" after his unlawful arrest), the police misconduct in failing to obtain a warrant was not "flagrant," and, more importantly, Maciel was implicated by his co-defendants before he gave the incriminating statements, satisfying the "intervening circumstances" factor. Maciel was also given *Miranda* warnings. Thus, the appellate court held that the taint of the illegal arrest was "sufficiently attenuated so that his incriminating statements were not admissible." *People v. Maciel,* 275 Ill.App.3d 1131, 229 Ill.Dec. 885, 692 N.E.2d 874, 1995 WL 939067, No. 1–93–0688, slip op. at 12 (Ill.App.Ct. 1st Dist. Nov. 14, 1995). By basing its analysis on *Harris* and *Brown,* the appellate court applied the proper constitutional case law to the facts.

In sum, Maciel had a full and fair opportunity to litigate the Fourth Amendment challenge to his arrest. Thus, he cannot raise his Fourth Amendment claims in this proceeding. *See id.*[8]

### III. Trial Errors

■ Maciel alleges numerous trial errors pertaining to the limitations placed upon his counsel's opening remarks, prosecutorial misconduct, and the admission of prejudicial evidence. Some of these claims purely involve state law; Maciel cannot disguise them as due process claims. *See Kurzawa,* 146 F.3d at 440; *Bell v. Duckworth,* 861 F.2d 169, 170 (7th Cir.1988). The claims that do present issues of federal law are either meritless or procedurally defaulted.

8. Maciel attempts to avoid this conclusion by arguing his attorney rendered ineffective assistance by failing to obtain suppression of his confession. We address this claim in Section IV.

9. He claims that this action violated his "constitutional right to due process, trial by jury, present a defense, the assistance of counsel, and against self-incrimination." (Pet. at 5.)

10. Maciel's post-conviction petition merely states at the top: "Fourth—Fifth and Fourteenth Amendments." Even giving Maciel the benefit of the doubt by finding that this was sufficient notice of his Fifth Amendment claim, the claim is procedurally defaulted as he failed to raise it on

### A. Opening Statement

Maciel contends that a slew of his constitutional rights were violated when the trial court precluded counsel from referring to the February 3 incident of police brutality in his opening statement, and from eliciting testimony concerning that event until Maciel testified as to his state of mind.[9] Although Maciel has defaulted several of the constitutional bases for this claim,[10] he at least presented a due process argument to the state courts, and so we address his challenge to the trial court's rulings regarding the February 3 incident.

■ In the appellate proceedings, the State contended that Maciel waived these issues by failing to object to the limitation at trial or in a post-trial motion. Maciel, in turn, contended that the State waived its waiver defense by not objecting to a "catch-all" reservation of rights to object to trial errors upon review of the transcript included in Maciel's post-trial motion. The Illinois appellate court found that the State had not waived the waiver defense, thereby implying a determination that Maciel waived this argument, but then proceeded to address Maciel's claim under a "plain error" analysis. Because it is unclear whether the appellate court rested its decision on the state procedural bar (i.e., waiver), we will review Maciel's claim. *See Coleman v. Thompson,* 501 U.S. 722, 737, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (finding that in such situations, "the state court decision did not in fact rest on an independent and adequate state ground," thus barring review).

direct appeal or in an appeal from the denial of his post-conviction petition. Moreover, in his habeas petition, Maciel raises for the first time that his right to trial by jury was violated as a result of these circumstances. We may not address any question unless the state courts "have had a 'fair opportunity' to consider a question of constitutional import before federal collateral review on the question is appropriate." *Kurzawa,* 146 F.3d at 441. Maciel did not raise the trial by jury issue on direct appeal or in his post-conviction petition. Maciel did not provide the state courts with a fair opportunity to address this claim, and thus it is procedurally barred. *See Kurzawa,* 146 F.3d at 441–42.

Although Maciel may view the trial court's rulings on the February 3 incident as a constitutional issue, we do not, nor did the state appellate court. The appellate court found that the trial court's limitations on the defense's opening statement, and the requirement that Maciel testify as to his state of mind before other evidence of his state of mind was presented, were purely a matter of state evidentiary rules—specifically relevance—and not of constitutional significance. Because this claim is not grounded in federal law, it is not cognizable on habeas review.

Maciel contends, without citing legal authority, that "a defendant in a criminal case has a constitutional right to make opening statements." Although he admits that the trial court has discretion to limit opening statements, he further contends, again without citing authority, that "the attorney should be permitted to comment upon evidence he or she expects to present and to outline the defense theory for the jury, indicating the facts to be presented in support of that theory." (Petitioner's Reply Mem. at 9 .) However, "[e]rrors in the management of a state criminal trial do not deny the defendant due process of law, unless they are so harmful to the cause of truth that, singly or cumulatively, they make the defendant's conviction fundamentally unfair." *Bell*, 861 F.2d at 170 (citation omitted). Moreover, "the due process clause does not incorporate every refinement of legal procedure designed to make trials fairer or more accurate—not even one hallowed by time." *Id.* "It forbids only egregious departures ... from accepted standards of legal justice." *Id.* (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). Even assuming that the trial judge erred by excluding reference to the February 3 incident during defense counsel's opening statement, this alleged error in no way made Maciel's conviction "fundamentally unfair." As the appellate court noted, Maciel "in fact put on evidence regarding his state of mind and argued it in closing." Moreover, Maciel's family testified at trial concerning the February 3 incident. The jury heard this testimony and considered it in their deliberations. The fact that the incident was not headlined in the opening statement did not result in a "fundamentally unfair" trial.

## B. Violation of Right to Confront Witnesses

Maciel contends that his Sixth Amendment right to confront witnesses was violated by the admission, through Officer Lucas, of "hearsay statements" by unidentified declarants who said that Maciel was involved in the shooting. The Illinois appellate court, however, found that Maciel "failed to object to the testimony at trial or in his motion for new trial and has therefore waived this issue." *People v. Maciel*, 275 Ill.App.3d 1131, 229 Ill.Dec. 885, 692 N.E.2d 874, 1995 WL 939067, No. 1–93–0688, slip op. at 18 (Ill.App.Ct. 1st Dist. Nov. 14, 1995). Thus, Maciel's claim is procedurally barred unless he can demonstrate cause and prejudice, or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

Maciel's only allegation of "cause" is his ineffective assistance of counsel claim. As discussed in Section IV below, Maciel procedurally defaulted his ineffective assistance claims. Therefore, Maciel cannot rely on ineffective assistance of counsel as the "cause" of his procedural default, i.e., failure to make a contemporaneous objection to the officer's testimony. *See Carrier*, 477 U.S. at 488–89, 106 S.Ct. 2639.

Although we need not do so, we note also that Maciel has failed to establish prejudice. To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Carrier*, 477 U.S. at 494, 106 S.Ct. 2639 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Maciel contends only that admitting the hearsay evidence, in conjunction with other errors, could "have possibly affected the outcome." (Mem. in Support of Pet. for Habeas Corpus at 23.) He also argues that the hearsay testimony "was used as a primary link in the State's case" and as such it "could well have contributed to his conviction." (*Id.* at 25.) This simply is not

enough to establish prejudice. Without saying more, Maciel's assertions of "could have possibly" and "could well have" do not adequately demonstrate that Officer Lucas's testimony as to his investigatory procedures "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 494, 106 S.Ct. 2639. Maciel cannot establish that the admission of Officer Lucas's testimony resulted in a fundamental miscarriage of justice.

### C. Prosecutorial Misconduct

Maciel contends that his due process right was violated by the State's "argument and insinuation" during closing that Maciel had intimidated witnesses, namely Nina Zavala and Joseph Santillan. Maciel contends that such misconduct was "inherently prejudicial," especially in light of his coercion defense. We agree with the State that Maciel is procedurally barred from raising this claim on habeas review.

Maciel failed to object to the State's intimidation argument at trial, and the Illinois appellate court found that this claim was therefore waived. This claim is procedurally defaulted, then, unless Maciel establishes cause and prejudice, or a fundamental miscarriage of justice. Maciel has asserted cause through his ineffective assistance of counsel claim. However, as discussed in Section IV below, that claim too is procedurally barred.

 In any event, even if we evaluate the merits of this claim, Maciel must prove both that the prosecutor's remarks were improper and that they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id.* at 181, 106 S.Ct. 2464 (citation omitted). Instead, "they must be so serious that they poison the entire atmosphere of the trial." *Lieberman*, 128 F.3d at 1097 (citation omitted). "To carry this burden, [Maciel] must show that it is at least likely that the misconduct complained of affected the outcome of his trial—i.e., caused the jury to reach a verdict of guilty when otherwise it might have reached a verdict of not guilty." *Rodriguez v. Peters*, 63 F.3d 546, 558 (7th Cir.1995) (citation and internal quotation marks omitted).

 Maciel contends that the remarks made by the State in closing arguments were improper because they "were made without any evidentiary support." (Mem. in Support of Pet. for Habeas Corpus at 26.) Again, this is purely a state law issue. The Illinois appellate court properly noted that "[p]rosecutors are afforded wide latitude in closing argument and may comment upon the evidence and all legitimate inferences therefrom." *People v. Maciel*, 275 Ill.App.3d 1131, 229 Ill.Dec. 885, 692 N.E.2d 874, 1995 WL 939067, No. 1–93–0688, slip op. at 24 (Ill.App. Ct. 1st Dist. Nov. 14, 1995). The appellate court then pointed out that references to Zavala's fear of retribution were admitted into evidence, and thus the State could properly comment upon it. Also, the jury could reasonably infer that "Santillan feared defendant where he initially identified Moreno and Delgado in a lineup and subsequently denied doing so and where he failed to tell officers at the same lineup that he knew defendant." *Id.* at 25, 1995 WL 939067. Thus, the remarks were supported by evidence presented at trial.

 Even if the remarks were improper, Maciel has not shown that they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Wainwright*, 477 U.S. at 181, 106 S.Ct. 2464 (quoting *DeChristoforo*, 416 U.S. at 642, 94 S.Ct. 1868). Maciel contends only that the State's closing argument was "extremely prejudicial," "inherently prejudicial," "impaired" the credibility of Zavala and Santillan, and "destroy[ed] the credibility of the defense claim of coercion." (Mem. in Support of Pet. for Habeas Corpus at 26–27.) However, one of the jury's primary functions is to evaluate the credibility of witnesses. *Harmon v. McVicar*, 95 F.3d 620, 623 (7th Cir.1996). The jury did so here, based upon

the evidence introduced at trial. That Maciel's defense and the credibility of his witnesses were impaired by argument based on evidence properly introduced at trial is simply not a violation of Maciel's due process rights.[11] Mindful of the limited nature of our inquiry, we cannot conclude that the appellate court's ruling was contrary to or an unreasonable application of Supreme Court authority.

### D. Introduction of Prejudicial Evidence

Maciel argues that his constitutional right to a fair trial was violated by the introduction of certain prejudicial evidence, including evidence of Maciel's gang membership, "suggestions that he regularly carried a gun, inferences that he had been involved in a prior shooting, and the introduction of a photograph showing Maciel wearing a holster." (Mem. in Support of Pet. for Habeas Corpus at 27.) We agree with the State that evidence of Maciel's gang membership was procedurally defaulted; that testimony concerning Maciel's involvement in a prior shooting was properly stricken from the record; and that the trial court did not violate the Constitution by admitting the photograph, and thus any error was harmless.

The appellate court unequivocally found that Maciel waived the issue of gang membership by failing to object at trial or in his post-trial motion. Thus, this claim is procedurally defaulted. Moreover, as discussed in Section IV, Maciel cannot rely on ineffective assistance of counsel to excuse his procedural default.

■ Maciel's claims concerning gun-use are without merit. Introduction at trial of Maciel's gun use in no way amounts to an error of constitutional proportion. Indeed,

Maciel contends only that it constituted improper "other crimes" evidence and, "especially considered cumulatively," violated Maciel's due process rights. However, the admission of "other crime" evidence is an issue of state law and, we reiterate, "[e]rrors in the management of a state criminal trial do not deny the defendant due process of law, unless they are so harmful to the cause of truth that, singly or cumulatively, they make the defendant's conviction fundamentally unfair." *Bell*, 861 F.2d at 170 (citation omitted). Maciel has not demonstrated—because he cannot—that introduction of this evidence resulted in a "fundamentally unfair" trial, and led to "the conviction of an innocent person." *Thompkins*, 965 F.2d at 333.

At trial, the State argued that Maciel's familiarity with guns was relevant to determining whether the shooting was accidental or intentional, an essential element of the State's claim. The Illinois appellate court did not upset the trial court's determination of relevancy, and neither will we. Moreover, the appellate court found that it was not an abuse of discretion for the trial court to admit the photograph for impeachment of a non-collateral matter. This was an issue of state evidentiary rules, not a constitutional one, and we defer to the state courts.

■ Finally, Maciel contends that the State's submission of evidence that he was involved in a prior shooting amounted to a due process violation. Not so. Officer Jack Wilkins testified that on February 3, 1991, he responded to a call that a shooting suspect had just entered Maciel's home. The trial judge ordered Wilkins' statement stricken, and the jury was instructed to disregard it. Any prejudice to Maciel was thereby cured.

---

11. Maciel does not argue that the prosecutor's questioning of Zavala and Officer Lucas constituted prosecutorial misconduct. However, we note that this issue was addressed by the appellate court. There, the court found that the improper remarks, upon defense counsel's objection, were properly stricken from the record, and the jury was instructed to disregard them. Thus, the trial court quickly alleviated any prejudice caused by the prosecutor's misstatement. Moreover, the court instructed the jury to disregard inflammatory testimony by Officer Lucas as to Zavala's demeanor, even absent an objection by

the defense. The jury was allowed to consider only that Zavala "appeared to be afraid or reluctant." Furthermore, as noted by the appellate court, Maciel "opened the door" on cross-examination to that particular line of questioning by alluding to the fact that Officer Lucas would have written a report identifying Zavala and detailing his conversation with her had he actually spoken to her. Because Maciel opened the door, the State was allowed during redirect to question Officer Lucas about Zavala's demeanor. These comments were therefore not prejudicial. *See Rodriguez*, 63 F.3d at 558.

### E. Cumulative Impact of Trial Errors

Maciel alleges that the cumulative impact of the alleged errors at trial deprived him of his constitutional right to a fair trial. As we stated above, Maciel has failed to demonstrate that "the errors or irregularities of which he complains probably caused a miscarriage of justice, that is, the conviction on an innocent person." *Thompkins*, 965 F.2d at 333. Maciel's due process rights were not violated. He had a constitutionally fair trial.

## IV. Ineffective Assistance of Counsel

Maciel argues ineffective assistance of counsel in violation of the Sixth Amendment resulting from his counsel's failure to investigate Sergeant O'Hara, one of the officers involved with Maciel's arrest, and also for failing to object to the trial errors discussed in Section III. We agree with the State that Maciel's ineffective assistance claims are procedurally defaulted.

### A. Failure to Investigate

Maciel's ineffective assistance claim based on counsel's failure to investigate and present evidence pertaining to Sergeant O'Hara's misconduct is procedurally barred. Maciel first raised this claim in his petition for post-conviction relief. The trial court denied his petition on January 19, 1996. On August 16, 1996—a full six months after the court denied his petition, and well beyond the time limit for filing an appeal—Maciel filed a motion for leave to file a late notice of appeal with the Illinois appellate court. The appellate court summarily denied Maciel's petition. The "failure to appeal the dismissal of a post-conviction petition in Illinois state court will ordinarily be treated as an independent and adequate state ground (as if a state court had actually found the claims procedurally barred), preempting further habeas review in federal court." *Cawley*, 71 F.3d at 694. Filing a motion for leave to file a late notice of appeal that was denied does not change the analysis: "considerations of comity and federalism that underlie our procedural default doctrine include respect for a state's appeal deadlines." *Id.* at 695 n. 8. We respect the state court's enforcement of its own rules, *see id.* at 694, and will not review Maciel's

claims, unless he can demonstrate both cause and actual prejudice, or that failure to review his claim would result in a "fundamental miscarriage of justice." *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir.1997).

Maciel may demonstrate cause by showing "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488, 106 S.Ct. 2639. He attempts to excuse the six-month delay, arguing that (a) the state court delayed notifying him of the disposition of his post-conviction petition; (b) the prison delayed forwarding the tardily-sent notice to Maciel; and (c) because the prison was on lockdown, Maciel was unable to communicate with others, obtain legal assistance, or research the law himself in order to prepare his own appeal. These excuses do not justify a six month delay.

Even assuming that Maciel received late notice of the state court's denial of his post-conviction petition, he claims he received actual notice "during the second week of February 1996," (Pet. for Writ of Habeas Corpus at 4), just days before his notice of appeal was due. Therefore, it cannot be the State's fault that he didn't file the notice of appeal until August 1996. Moreover, Maciel needed only to reallege the allegations in his post-conviction petition, basically in "form" fashion, and send it to the Illinois appellate court. He did not need to conduct extensive—indeed, any—research to do so. Nor did he require legal assistance. Maciel has failed to demonstrate that external factors caused his failure to file a timely notice of appeal. We need not address prejudice. *See Cawley*, 71 F.3d at 696.

Nor has Maciel established that failure to overlook his procedural default would result in a "fundamental miscarriage of justice." To establish a fundamental miscarriage of justice, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496, 106 S.Ct. 2639; *accord Lieberman*, 128 F.3d at 1095. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than

not that no reasonable juror would have convicted him." *Bousley v. United States,* —— U.S. ——, ——, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation and internal quotation marks omitted). Moreover, " 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* Maciel has not argued that counsel's ineffective assistance resulted in the conviction of an innocent man. Rather, his claim is more of the "legal insufficiency" type. Maciel attacks only his confession; but a plethora of other evidence was presented at trial that establishes Maciel's guilt. For example, Officer Lucas testified that several eyewitnesses told him that Maciel was involved in the shooting. Moreover, Maciel's co-defendants implicated him as the shooter. Maciel has in no way demonstrated that the jury convicted an innocent man. Because Maciel cannot show cause and prejudice or a fundamental miscarriage of justice, he is procedurally barred from pursuing his claim that counsel failed to investigate Sergeant O'Hara.

In any event, Maciel's ineffective assistance claim would fail on the merits. To state a valid ineffective assistance claim, Maciel must demonstrate "that counsel's representation fell below an objective standard of reasonableness" and that he was prejudiced by his counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Seventh Circuit has repeatedly held that habeas petitioners raising ineffective assistance claims must clear a "high hurdle." *See, e.g., Griffin v. Camp,* 40 F.3d 170, 173 (7th Cir.1994). "Indeed, we expect that few petitioners will be able to pass through the 'eye of the needle' created by *Strickland.*" *Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir.1987). Because counsel is presumed effective, habeas petitioners face an uphill battle in establishing a successful ineffective assistance of counsel challenge.

 Maciel argues that his counsel's failure to investigate and present evidence regarding Sergeant O'Hara's prior misconduct constituted ineffective assistance of counsel. Specifically, Maciel alleges that the Chicago Police Department suspended Sergeant O'Hara for coercing confessions from suspects in other cases and that Sergeant O'Hara was involved with Maciel's arrest. He asks us, based on these facts, to infer ineffective assistance for failure to investigate. Additionally, Maciel claims his attorney was later suspended from practice for neglecting other cases.

Notwithstanding these facts, Maciel fails to demonstrate how his attorney's neglect in other cases has any bearing on his own. We decline to impute Maciel's attorney's neglect in other cases to Maciel's case. *Bond v. United States,* 1 F.3d 631, 637 (7th Cir.1993). Counsel vigorously argued that Maciel's confession should be suppressed and appears to have adequately represented Maciel throughout the proceedings. Nor does Maciel connect O'Hara's misconduct in other cases to his own allegedly coerced confession. Indeed, he has not told us why counsel should have investigated O'Hara: he does not allege that O'Hara played any role in obtaining his statement or explain how O'Hara's suspension has any bearing whatsoever on his criminal proceedings. The evidence presented at trial established that Maciel gave his statement to Detective Dwyer, then to a court reporter and Assistant State's Attorney Lustig. Because Maciel never alleged that Sergeant O'Hara coerced *his* confession, counsel's failure to investigate under these circumstances was not unreasonable.

Furthermore, Maciel fails to show that he was prejudiced by counsel's failure to investigate Sergeant O'Hara. Maciel claims that his counsel's alleged failure "prejudiced" him because "[s]uch evidence would have strongly supported Maciel's claim that his statements were coerced." (Petitioner's Reply Mem. at 9.) But again, Maciel has not alleged that O'Hara played any role in coercing his confession. Therefore, it is impossible that presentation of this evidence would have affected the outcome of his trial.

In sum, Maciel procedurally defaulted his failure to investigate claim and has not established cause and prejudice or a fundamental miscarriage of justice. Alternatively, this claim fails on the merits. Thus, we deny Maciel's request for relief on Sixth Amendment grounds.

## B. "Cause" for Procedural Default

 Maciel attempts to avoid procedural default for many of his claims discussed in Sections II and III by arguing ineffective assistance of counsel; specifically, his Fourth Amendment claim, his Sixth Amendment confrontation claim, and the introduction of evidence that Maciel was a gang member. "A petitioner can establish cause for a procedural default by demonstrating that he received ineffective assistance of counsel." *Pisciotti,* 143 F.3d at 300. "However, the ineffective-assistance claim must have been presented to the state courts in the manner required by state procedural rules." *Id.* Maciel failed to properly present his "ineffective assistance as cause" claims to the state courts. These claims appeared only in his post-conviction petition, which Maciel did not timely appeal. As explained above, a timely appeal was necessary to preserve the issues for habeas. *Cawley,* 71 F.3d at 694. Thus, he cannot rely on ineffective assistance as "cause" for his procedural defaults.

Moreover, Maciel never presented certain allegations of ineffective assistance of counsel to the state courts. Specifically, Maciel raises for the first time in his federal habeas petition allegations that his counsel failed "to object to the State's presentation of evidence suggesting Mr. Maciel's involvement in other offenses and fail[ed] to object to improper comments and arguments by the prosecutor." (Am. to Habeas Pet. at 5.) Because the state courts have not had a "fair opportunity" to consider these claims, they are procedurally barred. *See Kurzawa,* 146 F.3d at 441.

## V. Constitutionally Excessive Sentence

Finally, Maciel argues that his 60 year sentence is unconstitutionally excessive, given his age at the time of the crime and the lack of unusual or heinous circumstances surrounding the incident. Maciel concedes that the "severity of a sentence is normally considered outside the purview of a federal court in a habeas corpus proceeding." (Mem. in Support of Pet. for Habeas Corpus at 28.) However, he argues that the trial court relied on "improper considerations" when imposing the sentence. Specifically, Maciel contends that the trial court violated his Fifth Amendment rights by considering his protestations of innocence as an aggravating factor.

 "[A] federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit." *Koo v. McBride,* 124 F.3d 869, 875 (7th Cir.1997) (quoting *Gleason v. Welborn,* 42 F.3d 1107, 1112 (7th Cir.1994)). Under Illinois law, Maciel faced a maximum sentence of 60 years. *See* Ill.Rev.Stat.1991, ch. 38, par. 1005–8–1. The state court did not violate Maciel's federal rights by sentencing him to a term within the limit set by the Illinois legislature. *See Koo,* 124 F.3d at 876.

The sentencing court commented that the shooting was "pretty close" to necessitating an extended term, given the "wanton and senseless manner" in which it was committed. This in no way amounts to an "improper consideration." We find Maciel's argument that Buffa died as a result of (only) a single gunshot to the head uncompelling. The father of two young children was murdered over a case of beer. That the trial court termed this "wanton and senseless" is not inappropriate.

 Maciel further contends that the court improperly relied on his protestations of innocence as an aggravating factor, in violation of his Fifth Amendment right against self-incrimination. As stated by the appellate court, "[t]he [trial] court also stated that defendant had chosen the law of the gang and the gun and that the perjury he committed on the stand, his lack of remorse and his continued protestations of innocence were aggravation." Again, Maciel's real dispute is with the trial court's credibility determination. These issues are beyond our reach. Maciel's constitutional rights were not violated.

## CONCLUSION

After careful consideration, this Court finds that neither Maciel's conviction nor his sentence violated the Constitution in any manner cognizable under the habeas corpus statute. Nor was Maciel denied objectively reasonable representation at trial. Accord-

ingly, Maciel's petition for habeas relief is denied.

The Clerk of the Court is directed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of the respondent.